FILED
MAR 6 - 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Judith C. Briggs,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 01-1876 (RJL) |
| | ) |
| **Washington Metropolitan Area** | ) |
| **Transit Authority, et al.** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION
(March _1_, 2006) [#109, 112]

Plaintiff Judith Briggs filed the instant action against multiple defendants, alleging wrongful death and survival claims arising from the unsolved murder of her son, whose body was found inside a plywood fencing enclosure at the Mt. Vernon Square Metro Station ("Metro Station"). Before the Court are two motions for summary judgment filed by: (1) defendants Washington Metropolitan Area Transit Authority ("WMATA"), the Washington Convention Center Authority ("WCCA"), the Clark Construction Group ("Clark"), and the Sherman R. Smoot Corporation ("Smoot"); and (2) defendant District of Columbia ("the District").[1] Upon consideration of the parties' submissions and the entire record herein, for the reasons set forth below, defendants' motions are GRANTED.

---

[1] Hereinafter, WMATA, WCCA, Clark, Smoot, and the District shall be collectively referred to as "the defendants."



## BACKGROUND[2]

On August 20, 2000, Dr. Gregory Derringer ("decedent") was stabbed to death by an unknown criminal assailant. According to the plaintiff, the neighborhood surrounding the Mt. Vernon Square Metro station ("Metro Station") was a high-crime area or "hot spot." At the time of the murder, the various defendants were constructing a new convention center, which required enclosing the Metro Station's entrance with metal fencing and enclosing the area surrounding the station's escalators with plywood approximately two stories high. The plaintiff alleges that one of the two lights inside the wooden enclosure was not functioning on the night the murder occurred, and there was no officer staffing the police substation near the station's entrance at the time of the murder.

Plaintiff Judith Briggs, the duly appointed personal representative of her son's estate, has filed a wrongful death claim pursuant to D.C. Code § 16-2701 et seq. (2001) and a survival claim pursuant to D.C. Code § 12-101 et seq. (2001). Specifically, she alleges that there was a foreseeable risk that third persons would engage in criminal activity in the enclosed, poorly lit station entrance. Thus, according to the plaintiff, the defendants were negligent in constructing an unsafe and poorly lit wooden enclosure with inadequate security. The plaintiff claims that, as a result of the defendants' alleged negligence, Dr. Derringer was murdered, and his family has been deprived of his accumulated earnings and has sustained

---

[2] The "Background" section of this Memorandum Opinion has been adapted from this Court's earlier Memorandum Opinion in *Briggs v. Wash. Metro. Area Transit Auth.*, 293 F. Supp. 2d 8 (D.D.C. 2003).

pain, suffering, and various expenses.

Currently before the Court are the defendants' respective motions for summary judgment.[3] The defendants argue, *inter alia*, that the plaintiff has failed to: (1) establish any breach of a national standard of care for the configuration of construction fencing or lighting levels at subway station entrances for crime prevention; (2) produce any evidence of the heightened level of foreseeability required to impose liability for the criminal act of a third party; (3) show the requisite causal nexus between the construction fences or lighting conditions at the Metro Station entrance and the murder at issue; and (4) overcome certain governmental immunities that apply to all defendants. (Joint Mem. & P. & A. in Supp. of Mot. for Summ. J. by Defs. WMATA, WCCA, Clark, and Smoot ("Joint Mot. for Summ. J.") at 3-4; *see also* Def. D.C.'s Mot. for Summ. J. at 1.)

For the following reasons, this Court finds that the plaintiff has failed as a matter of law to meet her burden of producing evidence of the heightened level of foreseeability

---

[3] Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Under Rule 56, summary judgment shall be granted when the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether there is a disputed issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Where the court finds that facts material to the outcome of the case are at issue, a case may not be disposed of by summary judgment. *Id.* 248. If the facts in dispute are "merely colorable, or . . . not significantly probative, summary judgment may be granted." *Id.* at 249-50. A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248; *see also Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996). "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 255.

required to impose liability on the defendants for the intervening criminal act of a third party. Accordingly, the plaintiff's claims must be dismissed.[4]

## DISCUSSION

I. *Intervening Criminal Acts of Third Parties Require a Heightened Showing of Foreseeability.*

To establish a prima facie case of negligence, a plaintiff must establish proximate cause linking the defendants' acts to the plaintiff's injury. *See District of Columbia v. Frick*, 291 A.2d 83, 84 (D.C. 1972) ("It is elementary that an essential element in any negligence action is causation, i.e., a reasonable causal connection between the act or omission of the defendant and the plaintiff's injury."). Ordinarily an intervening act of a third party will break the chain of causation unless the act was reasonably foreseeable. *See McKethean v. Wash. Metro. Area Transit Auth.*, 588 A.2d 708, 716 (D.C. 1991) (citing, *inter alia*, *Lacy v. District of Columbia*, 424 A.2d 317, 323 (D.C. 1980)). If the intervening act is criminal, as opposed to merely negligent, however, the District of Columbia requires a "more heightened showing of foreseeability." *Id.* at 716-17; *see Lacy*, 424 A.2d at 323 ("[B]ecause of the extraordinary nature of criminal conduct, the law requires that the foreseeability of the risk be more precisely shown."); *Bell v. Colonial Parking, Inc.*, 807 F. Supp. 796, 797 (D.D.C. 1992) ("[I]t is clear that in recent years the D.C. Court of Appeals has adopted a restrictive view of liability for the criminal acts of an intermeddler."); *Potts v. District of Columbia*, 697

---

[4] Because the ground upon which this Court relies in granting the defendants' motions is independently dispositive of the plaintiff's claims, the Court need not and will not address the defendants' additional arguments.

A.2d 1249, 1252 (D.C. 1997).

Our Circuit Court has read the District of Columbia Court of Appeals' decision in *Lacy* as requiring proof that a specific type of crime, and not just crime in general, be particularly foreseeable before liability can be assessed against the non-criminal actor.[5] *See Romero v. Nat'l Rifle Ass'n*, 749 F.2d 77, 79-80 (D.C. Cir. 1984); *cf. McKethean*, 588 A.2d at 717. Moreover, District of Columbia courts have consistently held that producing evidence of neighborhood crime generally, or even prior crimes near a specific location, is insufficient to overcome a motion for summary judgment or a directed verdict.[6]

In cases involving a "special relationship" between the parties, however, the foreseeability analysis proceeds along a "sliding scale." *Workman v. United Methodist*

---

[5] In *Lacy*, the plaintiff and her mother filed suit against various defendants for damages related to the sexual assault of the child plaintiff by a school janitor at a District of Columbia public school. *Lacy*, 424 A.2d at 318. The court affirmed a jury instruction requiring the jury to find that an "assault," rather than merely harm in general, was foreseeable before liability could be assessed against the defendants for the criminal conduct of the janitor. *Id.* at 323. The court further suggested that District of Columbia law actually requires even greater specificity in terms of foreseeability, observing that "it is arguable that the [trial] court, by conditioning liability on the foreseeability of 'assaults' rather than the foreseeability of 'sexual assaults,' was more helpful to appellants than the law permits." *Lacy*, 424 A.2d at 323-24.

[6] *See, e.g., Clement v. Peoples Drug Store, Inc.*, 634 A.2d 425, 429 (D.C. 1993) (affirming directed verdict based on fact that evidence of a "criminally active environment" is insufficient to prove the foreseeability of drug store employee's murder in the store's parking lot when there was no evidence that the defendant's employees or customers were at a greater risk than any other urban neighborhood dwellers); *Bailey v. District of Columbia*, 668 A.2d 817, 820 (D.C. 1995) (affirming summary judgment based on holding that "generic information" of shootings in the vicinity was insufficient to show heightened foreseeability of shooting that occurred at junior high school cheerleading competition); *Potts v. District of Columbia*, 697 A.2d 1249, 1252 (D.C. 1997) (affirming summary judgment based on holding that expert's opinion was insufficient to show the foreseeability of shooting outside of a boxing match held at the Washington Convention Center when the opinion would be based upon crime statistics and community characteristics).

5

*Comm. on Relief of the Gen. Bd. of Global Ministries of the United Methodist Church*, 320 F.3d 259, 264 (D.C. Cir. 2003). Thus, as our Circuit has recognized, "[i]f the relationship between the parties strongly suggests a duty of protection, then specific evidence of foreseeability is less important, whereas if the relationship is not of a type that entails a duty of protection, then the evidentiary hurdle is higher." *Id.* Generally, a duty of care is established between parties when "the ability of one of the parties to provide for his own protection has been limited in some way by his submission to the control of the other." *Kline v. 1500 Mass. Ave. Apartment Corp.*, 439 F.2d 477, 483 (D.C. Cir. 1970). When such a duty exists, the heightened foreseeability requirement in *Lacy* "can be met . . . by a combination of factors which give defendants an increased awareness of the danger of a particular criminal act." *District of Columbia v. Doe*, 524 A.2d 30, 33 (D.C. 1987). While such a duty may exist in this case due to a "special relationship" between the parties,[7] the plaintiff has nonetheless failed to demonstrate a combination of factors that would have given the defendants an increased awareness of the danger of this type of criminal act.

---

[7]  *See, Wash. Metro. Area Transit Auth. v. O'Neill*, 633 A.2d 834 (D.C. 1993) (holding that a common carrier has a duty to protect its passengers from foreseeable harm from fellow passengers). In light of the fact that the decedent's body was found *outside* the Metro Station entrance, however, this Court does not hold that a common carrier/passenger relationship in fact existed between defendants and the decedent. *See McKethean*, 588 A.2d at 712 (holding that WMATA does not owe a special duty of care as a common carrier to non-passengers, including those who are waiting to board at a bus stop); *Gillot v. Wash. Metro Area Transit Auth.*, 507 F. Supp. 454, 457 (D.D.C. 1981) (holding that the WMATA owed plaintiff murdered in a Metro station parking lot the same duty any parking lot owner would owe to a patron).

II.   *Plaintiff has failed to demonstrate a "combination of factors" that gave the defendants an increased awareness of the danger of the particular criminal act at issue.*

In order to define what constitutes a sufficient combination of factors to give an increased awareness of a particular criminal act, the plaintiff relies heavily upon the District of Columbia Court of Appeals' decision in *District of Columbia v. Doe* ("*Doe*"), 524 A.2d 30 (D.C. 1987), and our Circuit's opinion in *Doe v. Dominion Bank of Washington* ("*Dominion Bank*"), 963 F.2d 1552 (1992).[8] Neither case, however, is particularly apposite to the facts in this case.

In *Doe*, the District of Columbia appealed a jury verdict in favor of a fourth grade student and her mother who brought a negligence claim against the District after an unknown intruder gained access to the Plummer Elementary School and abducted and raped the young plaintiff. *Doe*, 524 A.2d at 30-31. On appeal, the District argued, *inter alia*, that the abduction and rape were unforeseeable as a matter of law; accordingly, it was error for the trial court to deny the District's motion for a directed verdict at the close of the plaintiffs' case. *Id.* at 31. The Court of Appeals disagreed, finding that the plaintiffs had submitted sufficient probative evidence for the jury to determine whether school officials were on

---

[8]   In addition to *Doe* and *Dominion Bank*, the plaintiff relies on cases in which District of Columbia law is not applied. (*See* Pl.'s Opp'n to Joint Mot. for Summ. J. at 39-40.) Because this Court finds that the District of Columbia decisions are dispositive of the issue before it, and because there is no evidence that the jurisdictions cited by the plaintiff employee a heightened foreseeability requirement, this Court does not consider these extra-jurisdictional decisions.

notice of the danger to students from "assaultive criminal conduct by intruders."[9] *Id.* at 33-34. Indeed, the *Doe* plaintiffs' evidence included: crimes against persons in and around the school, including an arson in the school and a robbery on the school's playground; sexual assaults and other violent activity in the surrounding area; offenses of a sexual nature that had occurred at other District of Columbia public schools; and deficient school security, including an open rear gate, broken doors, a malfunctioning intercom system connecting the classrooms to the principal's office, and the presence of adult males who freely roamed throughout the school. *Id.* at 31-32, 34.

Similarly, in *Dominion Bank* the plaintiff produced a considerable combination of factors. In the *Dominion Bank* case, the employee of a commercial tenant sued its landlord to recover for damages as a result of a rape perpetrated by an intruder on the leased premises. 963 F.2d at 1553-54. At the close of the plaintiff's evidence at trial, the defendant moved for a directed verdict. *Id.* at 1554. Concluding that the plaintiff had not proven that the rape was foreseeable, the district court entered judgment as a matter of law for the defendant, and the plaintiff appealed. *Id.* After a review of the record, our Circuit found that the plaintiff had "presented evidence sufficient to allow the jury to decide whether the [landlord] was on notice of the danger to tenants' employees from assaultive criminal conduct by intruders."

---

[9] It should be noted that the "special relationship" identified in *Doe* was between a school and its students. As the District of Columbia Court of Appeals has recognized, "[i]mplicit in *Doe*'s holding was the notion that particular care is required by school officials when the safety of young children is involved." *Clement*, 634 A.2d at 429. Thus, it cannot be said – for the purposes of *Workman*'s "sliding scale" foreseeability analysis – that a common carrier owes its *potential* passenger the same duty as a school official owes his/her young students. *See infra* note 7.

*Id.* at 1562. At trial, the plaintiff introduced evidence of: deficient building security, including unsecured vacant floors and offices, freely accessible via unlocked stairwells and unprogrammed elevators; criminal or unauthorized conduct within the building, including burglary, thefts of personal and office property, drug use, and sexual activity; tenant complaints of threatening and aggressive intruders appearing in the building in the month immediately preceding the rape; and letters from a tenant and the office manager expressing grave concern for the safety of employees prompted by the presence of disturbing strangers in the building. *Id.*

Here, however, the plaintiff's proffered evidence, either in specific or in general terms, does not approach the "combination of factors" adduced in either *Doe* or *Dominion Bank*. For example, plaintiff specifically contends that defendants were put on notice of possible future crimes when they received a customer complaint in September 1999 that the walls and lighting "could lead to robbery or rape." (Pl.'s Opp'n to Joint Mot. for Summ. J. at 41.) Upon closer inspection, however, the customer who lodged the complaint was complaining about poor lighting *outside* the plywood enclosure near the *north* walkway (*see* Mem. of P. & A. in Reply to Pl.'s Opp'n to Joint Mot. for Summ. J. ("Joint Reply") at 10 (citing Berguist Tr. at 185)), which did not exist in August of 2000 (*see id.*).[10] In addition, undisputed record evidence exists that within days of the September 1999 customer

---

[10] According to the plaintiff herself, the decedent's body was found lying in the southeast corner of the plywood enclosure across from the escalator, along the south wall. (*See* Pl.'s Opp'n to Joint Motion for Summ. J. at 11.)

complaint, an additional light was added to the north walkway. (*See* Joint Reply at 10.) Thus, having little relevance, if any, to the circumstances surrounding the decedent's death in August 2000.

On more general terms, plaintiff produced expert testimony that the neighborhood surrounding the Metro Station was a high crime area, otherwise known as a "hot spot," where there is an elevated risk of robbery accompanied by homicide. (*See* Pl.'s Opp'n to WMATA Mot. for Summ. J. at 42-43.) The types of crime analyzed in plaintiff's expert study, however, were unrelated – by kind or location – to the plywood construction fencing or lighting at the Metro Station entrance. For example, none of the crimes cited occurred near or within the confines of the plywood structure at the Metro Station entrance, nor did any include a stabbing or murder. (*See id.*; Joint Mot. for Summ. J. at 15-16; Joint Reply at 8-9.) Evidence of neighborhood crime generally or even prior crimes near a specific location has been consistently found by District of Columbia courts to be insufficient to overcome a motion for summary judgment or a directed verdict. *See, e.g., Clement*, 634 A.2d at 429 (holding that general information regarding the "criminally active environment" was insufficient to meet heightened foreseeability standard). Simply stated, the plaintiff has not demonstrated a "combination of factors"– analogous to those present in either *Doe* or *Dominion Bank* – that would have given the defendants an increased awareness of the danger of the particular criminal act that caused decedent's death.

Accordingly, this Court finds that the plaintiff has failed as a matter of law to meet

her burden of producing evidence of the heightened level of foreseeability required to impose liability on the defendants for the criminal act of a third party. As such, the Court GRANTS the defendants' motions for summary judgment. An appropriate Order will issue with this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge